UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYMEYON V. HILL,<br>   Plaintiff,<br>  v.<br>J. WEAVER, et al.,<br>   Defendants. | Case No. 21-cv-03640-YGR (PR)<br><br>**ORDER REOPENING THIS ACTION; AND DISMISSING COMPLAINT WITH LEAVE TO AMEND** |

## I. INTRODUCTION

On May 14, 2021, Plaintiff, a civil detainee currently in custody at California State Prison - Sacramento ("CSP-Sacramento"), filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. *See* Dkt. 1. Plaintiff did not file an application seeking leave to proceed *in forma pauperis* ("IFP").

On that same date, the Clerk of the Court sent a notice to plaintiff, informing him that his action could not go forward until he paid the filing fee or filed a completed non-prisoner IFP application. The Clerk sent plaintiff a blank IFP application and told him that he must pay the fee or return the completed application within twenty-eight days or his action would be dismissed.

When more than twenty-eight days had passed after the deficiency notice was sent to plaintiff, and plaintiff had not responded to the notice, the Court, by Order dated July 12, 2021, dismissed the action without prejudice. Dkt. 3.

Thereafter, plaintiff filed a request that the Court reopen the action on the ground that he had not received the Clerk's notice. Dkt. 5 at 1. Plaintiff did not file a completed IFP application with his motion to reopen.

In an Order dated February 3, 2022, the Court denied plaintiff's request to reopen the instant case because he still had not submitted his completed IFP application. Dkt. 7 at 1.

1    However, the Court gave plaintiff with one final opportunity to submit a completed non-prisoner's

2    IFP application. *Id.* at 1-2.  The Court added as follows: "If plaintiff does so, then the Court will

3    order the action reopened.  If, however, plaintiff fails to do so, the action will not be reopened."

4    *Id.* at 2.

5          On February 14, 2022, Plaintiff filed his non-prisoner IFP application.  Dkts. 8, 9.  Thus,

6    the Court now orders this action REOPENED.  His non-prisoner IFP application will be granted in

7    a separate written Order.

8          The Court now conducts its initial review of the complaint pursuant to 28 U.S.C. § 1915A.

9          Plaintiff has named as defendants in this action the following SVSP prison officials:

10   Correctional Counselor II Jeneffer Weaver; Clinician Psychologist Kimberly Siebiel; and Warden

11   T. Lemon.  Dkt. at 1, 2.  He also named Kathleen Allison, Secretary of the California Department

12   of Corrections and Rehabilitation ("CDCR").  *See id.*

13         Venue is proper because the events giving rise to some of the claims are alleged to have

14   occurred at SVSP, which is located in this judicial district.  *See* 28 U.S.C. § 1391(b).  Plaintiff

15   seeks injunctive relief and monetary damages.  Dkt. 1 at 3.

16   **II.   DISCUSSION**

17       **A.   Standard of Review**

18         A federal court must conduct a preliminary screening in any case in which a prisoner seeks

19   redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C.

20   § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims

21   that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek

22   monetary relief from a defendant who is immune from such relief.  *See id.* § 1915A(b)(1), (2).

23   *Pro se* pleadings must, however, be liberally construed.  *See Balistreri v. Pacifica Police Dep't*,

24   901 F.2d 696, 699 (9th Cir. 1988).

25         Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

26   claim showing that the pleader is entitled to relief."  To comport with Rule 8, "[s]pecific facts are

27   not necessary; the statement need only give the defendant fair notice of what the . . . claim is and

28   the grounds upon which it rests*."  Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

Although in order to state a claim a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The United States Supreme Court has explained the "plausible on its face" standard of *Twombly*: "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

A supervisor may be liable under section 1983 upon a showing of personal involvement in the constitutional deprivation or a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). This includes evidence that a supervisor implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman*, 942 F.2d at 1446; *see Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).

### B. Legal Claims

#### 1. Injunctive Relief

The threshold question presented is whether the Court has jurisdiction to consider

3

plaintiff's claims for injunctive relief. When an inmate has been transferred to another prison and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, the claim for injunctive relief should be dismissed as moot. *See Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995). A claim that the inmate might be returned to the prison where the injury occurred is too speculative to overcome mootness. *Id.* Here, plaintiff's transfer from SVSP to CSP-Sacramento renders moot his claims for injunctive relief. Therefore, the Court DISMISSES plaintiff's claim for injunctive relief.

### 2. Monetary Damages

Plaintiff, who was civilly committed in 1997 following a plea of not guilty by reason of insanity, states that on an unknown date, he was "illegally transferred to [the] CDCR by" defendants Weaver, Siebel, Lemon, and Allison "based on false charges created in plaintiff's c-file and medical file manufactured by [defendants]." Dkt. 1 at 3. Plaintiff claims that "[d]efendants are punishing [him] for filing recent grievances and filing lawsuits against the warden for violation plaintiff[']s due process. *Id.* Plaintiff adds that "[d]efendants have denied [him] a chance of release and have repeatedly placed false charges on plaintiff written by staff members from Patton State Hospital in 2004 of October[,] lying [and] stating that plaintiff tried to harm a psychologist." *Id.* Plaintiff claims that his transfer to the custody of the CDCR was "retaliatory and used to punish [him] for filing lawsuits against [the] CDCR." *Id.* Finally, plaintiff claims that "[d]efendants are punitive and plac[ed] plaintiff in a typical harsh condition of conferment in order to punish [him]." *Id.* Aside from injunctive relief, which has been dismissed above, Plaintiff requests punitive and monetary damages as well as his "immediate release" from prison. *Id.*

"It is well settled that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 122 S. Ct. 2017, 2027 (2002). Prisoners have no constitutional right to incarceration in a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983). A prisoner's liberty interests are sufficiently extinguished by his conviction such that the state may generally confine or transfer him to any of its institutions, to prisons in another state or to federal prisons, without offending the Constitution. *See Rizzo v. Dawson*, 778

F.2d 527, 530 (9th Cir. 1985) (citing *Meachum*, 427 U.S. at 225) (holding intrastate prison transfer does not implicate Due Process Clause), and *Olim*, 461 U.S. at 244-48 (holding interstate prison transfer does not implicate Due Process Clause)).  A non-consensual transfer is not *per se* violative of either due process or equal protection rights, *see Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991); *Stinson v. Nelson*, 525 F.2d 728, 730 (9th Cir. 1975), and no due process protections such as notice or a hearing need be afforded before a prisoner is transferred, even if the transfer is for disciplinary reasons or to a considerably less favorable institution, *see Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Johnson*, 948 F.2d at 519; *see also Coakley v. Murphy*, 884 F.2d 1218, 1221 (9th Cir. 1989).

California has adopted regulations concerning the subject of transfers of prisoners within the state prison system.  Those regulations, however, contain no substantive limitations on the prison officials' discretion to grant or refuse such transfers.  *See* Cal Penal Code § 5080; Cal. Code Regs. tit. 15, § 3379; *People v. Lara*, 155 Cal. App. 3d 570, 575-76 (1984).

It is unclear what plaintiff is specifically referring to when he states that he was "illegally transferred to [the] CDCR." Dkt. 1 at 3.  It seems that plaintiff was initially at Patton State Hospital, and he is now in the custody of the CDCR.  *See id.*  At the time plaintiff filed the complaint, he was housed at SVSP.  *Id.* at 1.  Focusing only on the act of plaintiff's transfer to SVSP pursuant to prison regulations, it seems that such a transfer would not implicate his constitutional rights and would not state a cognizable claim for relief under 42 U.S.C. § 1983.

However, to the extent that plaintiff is claiming that the named defendants were deliberately indifferent to his safety needs or retaliating against him by authorizing the transfer to SVSP, such an allegation *could possibly* state a claim for relief.  The Eighth Amendment requires that prison officials take reasonable measures to guarantee the health and safety of prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  But a prison official violates the Eighth Amendment only if: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety.  *Id.* at 834.  A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it.  *Id.* at 837.  Neither negligence nor

5

gross negligence warrant liability under the Eighth Amendment. *Id.* at 835-36 & n4. An "official's failure to alleviate a significant risk that he should have perceived but did not, . . . cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Instead, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)).

Here, the allegations in the complaint lack factual support showing that the named defendants were aware of any safety concerns based on their decision to authorize plaintiff's transfer to SVSP. *See* Dkt. 1 at 2-3. At most, their actions seem to amount to negligence, which is not actionable. *See Farmer*, 511 U.S. at 835-36 & n4. In addition, it seems that plaintiff only makes conclusory statements that defendants' decision to transfer plaintiff was based on "false charges" or that such a decision was "retaliatory and used to punish [him] for filing lawsuits against [the] CDCR." Dkt. 1 at 3. Therefore, plaintiff's Eighth Amendment claim is DISMISSED with leave to amend to set forth specific facts showing how each named defendant was deliberately indifferent to plaintiff's health and safety needs, if possible. *See Farmer*, 511 U.S. at 837. Again, it is not enough that a defendant was negligent or grossly negligent because he or she failed to alleviate a significant risk that he or she should have perceived. *See id.* at 838. Plaintiff also must link every defendant with his allegations of deliberate indifference to his health and safety needs so as to show how each defendant actually and proximately caused the deprivation of plaintiff's federal rights of which he complains. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

Meanwhile, retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). To state a claim for First Amendment retaliation against a government official, a plaintiff must demonstrate that (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship

6

between the constitutionally protected activity and the adverse action. *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016). Accordingly, a prisoner suing prison officials under section 1983 for retaliation must allege he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Id.* at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* (quoting *Sandin*, 515 U.S. at 482). Finally, a prisoner must at least allege that he suffered harm, since harm that is more than minimal will almost always have a chilling effect. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 n.11 (9th Cir. 2005).

Plaintiff has not stated a cognizable retaliation claim against the named defendants as he has failed to allege facts that show the alleged retaliatory actions of which he complains were taken *because of* plaintiff's protected conduct. The complaint's factual allegations regarding defendants' motivation for their alleged retaliatory actions are, at best, speculative. Specifically, plaintiff states in a conclusory fashion that his "illegal" transfer to the CDCR "was retaliatory and used to punish [him] for filing lawsuits against [the] CDCR." Dkt. 1 at 3. The Court notes that Plaintiff has not given any dates relating to his "illegal" transfer or any dates when he filed the aforementioned lawsuits against the CDCR. Additionally, he states that defendants "plac[ed] [him] in atypical harsh conditions of confinement in order to punish plaintiff," but neither does he elaborate on the dates of such confinement nor describe how such conditions were harsh. *See id.* However, retaliation is not established simply by showing adverse activity by defendant after protected speech; rather, plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this"). In addition, plaintiff does not allege whether the named defendants knew about plaintiff's conduct, i.e., his "lawsuits against

7

[the] CDCR." Without non-speculative allegations of defendants' motivation for their alleged retaliatory actions and knowledge of such protected conduct by defendants, no claim for retaliation is stated. Accordingly, plaintiff's retaliation claim is also DISMISSED. Plaintiff may, however, file an amended complaint if he can in good faith allege facts, subject to proof, that cure the pleading deficiencies noted above. If plaintiff chooses to amend his complaint and re-plead his claim against defendants, he must proffer enough facts to state a plausible claim that defendants actions were in fact retaliatory and that such retaliatory actions were done as a result of plaintiff's constitutionally protected activity.

Furthermore, plaintiff must allege facts supporting his claim against each defendant separately in his amended complaint showing his entitlement to relief from each defendant. Plaintiff should list the constitutional right he has, describe what defendants did or failed to do, and describe how each defendant's acts or omissions caused him injury. Plaintiff must be careful to allege facts showing the basis for liability for each individual defendant. He should not refer to the defendants as a group, i.e., "defendants;" rather, he should identify each involved defendant by name and link each of them to a specific claim by explaining what each defendant did or failed to do that caused a violation of his constitutional rights.

Plaintiff is reminded that in a section 1983 action a state official can only be liable for his or her own misconduct. *See Iqbal*, 556 U.S. at 677. Under no circumstances can a supervisor or superior be liable under section 1983 solely because he or she is responsible for the actions or omissions of another. *See Taylor*, 880 F.2d at 1045. A supervisor or superior may be liable under section 1983 only upon a showing of personal involvement in the constitutional deprivation or a sufficient causal connection between the supervisor's or superior's wrongful conduct and the constitutional violation. *See Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012).

### III. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The Clerk shall REOPEN the case file.

2. Plaintiff's complaint is DISMISSED with leave to amend in order to give him the opportunity to correct the deficiencies outlined above by filing a **simple, concise and direct**

8

Amended Complaint which:

    a.    States clearly and simply each claim he seeks to bring in federal court as required under Rule 8, and he should:

        i.    Set forth **each claim** in a separate numbered paragraph;

        ii.    Identify **each defendant** and the **specific action or actions each defendant took, or failed to take,** that allegedly caused the deprivation of plaintiff's constitutional rights; and

        iii.    Identify the injury resulting **from each claim**;

    b.    **Does not** make conclusory allegations linking each defendant by listing them as having direct involvement to his claims without specifying how each defendant was linked through their actions; and

    c.    **Does not** name any defendant who did not act but is linked solely in his or her respondent superior capacity or against whom plaintiff cannot allege facts that would establish either supervisorial or municipal liability.

3.    Within **twenty-eight (28) days** from the date of this Order, plaintiff shall file his Amended Complaint as set forth above. Plaintiff must use the attached civil rights form, write the case number for this action—Case No. C 21-3640 YGR (PR)—on the form, clearly label the complaint "Amended Complaint," and complete all sections of the form. Because the Amended Complaint completely replaces the operative complaint, plaintiff must include in it all the claims he wishes to present. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.), *cert. denied*, 506 U.S. 915 (1992). He may not incorporate material from the operative complaint by reference. If plaintiff wishes to attach any additional pages to the civil rights form, he shall maintain the same format as the form. **Plaintiff's failure to file his Amended Complaint by the twenty-eight-day deadline or to correct the aforementioned deficiencies outlined above will result in the dismissal of this action without prejudice.**

4.    It is plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11, a party proceeding *pro se* whose address changes

1  while an action is pending must file a notice of change of address promptly, specifying the new
2  address. *See* L.R. 3-11(a). The Court may dismiss without prejudice a complaint when: (1) mail
3  directed to the *pro se* party by the Court has been returned to the Court as not deliverable, and
4  (2) the Court fails to receive within sixty days of this return a written communication from the *pro*
5  *se* party indicating a current address. *See* L.R. 3-11(b).

6       5.    The Clerk shall send plaintiff a blank civil rights complaint form along with his
7  copy of this Order.

8       IT IS SO ORDERED.

9  Dated: March 10, 2022

_____
JUDGE YVONNE GONZALEZ ROGERS
United States District Judge